UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

REVIALO REX, an individual,

       Plaintiff,

                                        File No.  1:06-CV-633

v.

                                        HON. ROBERT HOLMES BELL

CSA-CREDIT SOLUTIONS OF
AMERICA, Inc., a Texas corporation,

       Defendant.

_____/

## **O P I N I O N**

      This matter is before the Court on Defendant CSA-Credit Solutions of America, Inc.'s motion to compel arbitration.  (Def.'s Mot. to Compel Arb., Docket #5.)  Defendant moves to compel arbitration under the Federal Arbitration Act ("FAA") and Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.  Plaintiff, Revialo Rex, contends that this dispute is nonarbitrable because:  the agreement to arbitrate was fraudulently induced, the agreement to arbitrate is unconscionable, Defendant waived its right to arbitrate, and Plaintiff's claims under the Credit Repair Organization Act ("CROA"), 15 U.S.C. §§ 1679-1679j, are nonarbitrable.  The Court heard oral argument on June 14, 2007.  For the reasons that follow, the Court grants Defendant's motion to compel arbitration.

# I.

Plaintiff is a resident of Edwardsburg, Michigan.  Defendant is a for-profit Texas corporation that offers "debt settlement" assistance.

On February 2, 2004, after reviewing Defendant's website and speaking with a "credit specialist" employed by Defendant, Plaintiff and Defendant entered into the Client Service Agreement (the "Agreement").[1]  (Agreement, Def.'s Br. in Supp., Docket #6, Ex. A.)  Under the terms of the Agreement, Defendant was to negotiate with Plaintiff's creditors (specifically, AT&T Universal, Chase, Citicard, Direct Merchants and Providian) to reduce the amount of Plaintiff's debt.

On February 19, 2004, an employee of Defendant advised Plaintiff that he should discontinue making payments to his creditors, which Plaintiff subsequently did.  Plaintiff also began making monthly service payments to Defendant.  After Plaintiff discontinued making payments on two different Citibank accounts, Citibank filed two separate lawsuits against Plaintiff.  At the direction of Defendant's Litigation Support Team, Plaintiff filed a "pro-per answer."  Citibank ultimately obtained judgments against Plaintiff in both lawsuits.  Plaintiff and Defendant dispute whether Defendant was able to successfully negotiate with any of Plaintiff's creditors.

---

[1]The Agreement provides that it was made on February 2, 2004, however, the signatures of both Revialo Rex and Naomi Rex are dated February 7, 2004.  The discrepancies between these dates does not implicate the motion to compel arbitration.

2

In late 2004, Plaintiff filed a complaint against Defendant with the Better Business Bureau of Metropolitan Dallas. After Plaintiff filed the complaint with the Better Business Bureau, Defendant offered to settle Plaintiff's dispute by refunding the service fees Plaintiff had paid to Defendant. Plaintiff accepted this settlement offer. Thereafter Plaintiff did not reply to the response that Defendant had filed to his original complaint. As a consequence of Plaintiff not filing a reply, the Better Business Bureau closed the complaint.

Plaintiff filed this lawsuit on September 1, 2006. Plaintiff asserts claims for: a violation of the CROA, fraudulent inducement to contract, a violation of the Michigan Credit Services Protection Act, MICH. COMP. LAWS §§ 445.1821-1826, a violation of the Michigan Consumer Protection Act, MICH. COMP. LAWS §§ 445.901-922, a breach of fiduciary duty, negligence, and unauthorized practice of law.

## II.

The FAA provides that arbitration clauses in commercial contracts "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C.A. § 2 (West 2007). If a plaintiff's claim is governed by an arbitration clause, a court must compel arbitration. 9 U.S.C.A. § 3 (West 2007). Under the FAA, a district court must make four threshold determinations before compelling arbitration:

> "first, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the

3

claims in the action are subject to arbitration, it must determine whether to stay
the remainder of the proceedings pending arbitration."

*Glazer v. Lehman Bros., Inc.*, 394 F.3d 444, 451 (6th Cir. 2005) (quoting *Stout v. J.D.
Byrider*, 228 F.3d 709, 714 (6th Cir. 2000)).

The FAA manifests "a liberal federal policy favoring arbitration agreements . . . ."
*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). "As a matter
of federal law, any doubts concerning the scope of arbitrable issues should be resolved in
favor of arbitration." *Masco Corp. v. Zurich Am. Ins. Co.*, 382 F.3d 624, 627 (6th Cir. 2004).
Federal law creates "a general presumption of arbitrability, and any doubts are to be resolved
in favor of arbitration 'unless it may be said with positive assurance that the arbitration clause
is not susceptible of an interpretation that covers the asserted dispute.'" *Highlands Wellmont
Health Network, Inc. v. John Deere Health Plan, Inc.*, 350 F.3d 568, 576-77 (6th Cir. 2003)
(quoting *AT&T Techs., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 650 (1986)).
The party opposing an arbitration agreement bears the burden of establishing that the dispute
is nonarbitrable. *Green Tree Fin. Corp. - Ala. v. Randolph*, 531 U.S. 79, 91 (2000).

### III.

The Court must first "determine whether a valid agreement to arbitrate exists."
*Glazer*, 394 F.3d at 450. The "ordinary state-law principles that govern the formation of
contracts will apply to this analysis." *Id.* In determining what state law governs the
formation of the Agreement, the inquiry begins with Michigan's choice of law rules because
this Court sits in Michigan. *Ruffin-Steinback v. dePasse*, 267 F.3d 457, 463 (6th Cir. 2001).

4

Under Michigan law, a contractual choice of law provision is valid unless: (i) "the chosen state has no substantial relationship to the parties or the transaction," or the chosen state's law "'would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state . . . .'" *Chrysler Corp. v. Skyline Indus. Servs.*, 448 Mich. 113, 126, 528 N.W.2d 698 (1995) (quoting RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 187(2)(b)). The Agreement includes a choice of law provision selecting Texas law as the governing law. (Agreement ¶9.) As to the first condition for the enforcement of the choice of law provision, Defendant is based in Texas, so that condition is satisfied. As to the second condition for the enforcement of the choice of law provision, neither party has identified any aspect of Texas law relevant to this case that would be contrary to the fundamental policy of Michigan, which is presumably the only state that could have a materially greater interest than Texas. Under Michigan conflict of law principles, the contractual choice of law provision selecting Texas law governs this dispute. Therefore, when federal law directs the Court to refer to the state law principles governing the formation of contracts, the Court will apply Texas law.

###### A.    Fraudulent Inducement of the Agreement to Arbitrate

In order to void an arbitration clause because the agreement to arbitrate was fraudulently induced the partying opposing arbitration must plead a "'well-founded claim of fraud in the inducement of the arbitration clause itself, standing *apart from the whole agreement*, that would provide grounds for the revocation of the agreement to arbitrate.'"

*Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 394 (6th Cir. 2003) (quoting *Arnold v. Arnold Corp.-Printed Commc'n For Bus.*, 920 F.2d 1269, 1278 (6th Cir. 1990)).

Plaintiff contends that Defendant fraudulently induced the agreement to arbitrate because Defendant made a series of statements indicating that arbitration is not fair to consumers. Plaintiff does not allege that these statements were made directly to him, rather, Plaintiff alleges that the statements were general statements of Defendant, such as those that appear on Defendant's website. Plaintiff does not allege that any of these statements were made to him or that he was aware of these statements at the time he entered into the arbitration clause. These alleged statements do not support a well-founded claim of fraud in the inducement of the arbitration clause itself, because Plaintiff has not alleged any relationship between these statements and his decision to enter into the arbitration clause.

Plaintiff also directs the Court to a document entitled "Forced Arbitration." The "Forced Arbitration" document is purportedly from Defendant and includes statements indicating that Defendant considers arbitration to violate the "right to due process" and that arbitration is generally unfair. (Forced Arbitration, Pl.'s Br. in Opp'n, Docket #9, Ex. A.). The "Forced Arbitration" document refers to the arbitration procedures allegedly employed by MBNA, not arbitration more generally. Plaintiff has not explained how a document that describes the arbitration procedures allegedly employed by a third-party implicates the arbitration clause in the Agreement. Arbitration under the arbitration clause in the Agreement is governed by the American Arbitration Association ("AAA"), to which the

6

"Forced Arbitration" document makes no reference.  Plaintiff's failure to establish some connection between his decision to enter into the arbitration clause in the Agreement and the "Forced Arbitration" document, precludes the "Forced Arbitration" document from providing the basis for a well-founded claim of fraud in the inducement of the arbitration clause itself.

###    B.      Unconscionability of the Agreement to Arbitrate

Whether an arbitration clause is unconscionable is governed by state law.  *Stutler v. T.K. Constructors, Inc.*, 448 F.3d 343, 345 (6th Cir. 2006).   Under Texas law, "[u]nconscionability includes two aspects: (1) procedural unconscionability, which refers to the circumstances surrounding the adoption of the arbitration provision, and (2) substantive unconscionability, which refers to the fairness of the arbitration provision itself."  *In re Halliburton Co.*, 80 S.W.3d 566, 571 (Tex. 2002) (citing *Southwestern Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 498-99 (Tex. 1991) (Gonzalez, J., concurring)).  Plaintiff "must prove both substantive and procedural unconscionability to prevail on the unconscionability issue."  *Arkwright-Boston Mfrs. Mut. Ins. Co. v. Westinghouse Electric Corp.*, 844 F.2d 1174, 1184 (5th Cir. 1988) (citing *Wade v. Austin*, 524 S.W.2d 79, 86 (Tex. App. 1975)) (applying Texas law).

Plaintiff contends that the arbitration clause is procedurally unconscionable because he could not have obtained similar services elsewhere.  Plaintiff's contention that he could not have obtained similar services elsewhere is based on Defendant's representations on its website that it offers unique services.  Plaintiff also contends that Defendant had more

market power because Defendant is larger economically and Plaintiff was subject to increasing financial pressure from his mounting credit card debts.  "The principles of unconscionability do not negate a bargain because one party to the agreement may have been in a less advantageous bargaining position.  Unconscionablity [*sic*] principles are applied to prevent unfair surprise or oppression." *In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 679 (Tex. 2006) (citing *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 757 (Tex. 2001)).  The arbitration clause in the Agreement, like the arbitration clause in *Palm Harbor Homes*, was labeled as an arbitration clause and stated that the parties were waiving the right to a jury trial.  *Id.*  Moreover, Plaintiff has not alleged that he was surprised by the arbitration clause. The Court finds that the arbitration clause is not procedurally unconscionable.

"The test for substantive unconscionability is whether, 'given the parties general commercial background and the commercial needs of the particular trade or case, the clause involved is so one-sided that it is unconscionable under the circumstances existing when the parties made the contract.'" *Palm Harbor Homes*, 195 S.W.3d at 678 (quoting *FirstMerit Bank*, 52 S.W.3d at 75.  Plaintiff contends that the arbitration clause is substantively unconscionable because the clause provides that the arbitration will take place in Dallas, Texas.  Plaintiff contends that it is unconscionable for Defendant to require a customer who already has substantial financial burdens to travel to Dallas, Texas, in order to arbitrate a dispute. Mr. Rex further contends that by requiring arbitration to occur in Dallas, Texas, Defendant effectively precludes its customers from bringing arbitration claims.  Defendant

8

responds that the arbitration clause designates the AAA and the AAA's Consumer Due Process Protocols require arbitration to occur "at a location which is reasonably convenient to both parties with due consideration of their ability to travel and other pertinent circumstances." (Consumer Due Process Protocol, Principle 7, Def.'s Br. in Resp., Docket # 10, Ex. A.)  Defendant has also provided a letter that confirms Defendant's willingness to have the arbitration held in Michigan. (Letter from Derek S. Witte to Stephen R. Boehringer, Def.'s Br. in Resp., Ex. C.)

In *FirstMerit Bank*, the Texas Supreme Court acknowledged that the United States Supreme Court's decision in *Randolph* provided the framework for analyzing a consumer's contention that an arbitration clause was substantively unconscionable because it imposed disproportionate costs on the consumer. 52 S.W.3d at 756.  As the Texas Supreme Court has concluded that the unconscionability of the costs imposed by an arbitration clause is governed by the analysis in *Randolph*, this Court will analyze Mr. Rex's contention about the Dallas, Texas, forum under *Randolph*.  In *Randolph* the United States Supreme Court acknowledged that "the existence of large arbitration costs could preclude a litigant . . . from effectively vindicating her federal statutory rights in the arbitral forum." 531 U.S. at 90. However, "where . . . a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs." *Id.* at 92.  Though the arbitration clause specifies a forum of Dallas, Texas, the AAA's Due Process Protocol, in conjunction with the letter from

9

Defendant's attorney, make clear that this dispute would be arbitrated in Michigan, not Texas. Plaintiff has not alleged any other reason why he would incur large arbitration costs. The potential for large arbitration costs to be imposed on Plaintiff has been negated by the selection of Michigan as the forum for any arbitration in this case. Therefore, the Court finds that the arbitration clause is not substantively unconscionable.[2]

### C.    Waiver

"'[A]n agreement to arbitrate may be waived by the actions of a party which are completely inconsistent with any reliance thereon.'" *Gen. Star Nat'l Ins. Co. v. Administratia Asigurarilor De Stat*, 289 F.3d 434, 438 (6th Cir. 2002) (quoting *Germany v. River Terminal Ry. Co.*, 477 F.2d 546, 547 (6th Cir. 1973) (per curiam)).  "'There is a strong presumption in favor of arbitration, and . . . waiver of the right to arbitration is not to be lightly inferred.'" *O.J. Distrib., Inc. v. Hornell Brewing Co.*, 340 F.3d 345, 356 (6th Cir. 2003) (quoting *Cotton*

---

[2]At the hearing on this motion, Plaintiff contended that the Court should follow *Hollins v. Debt Relief of America*, 479 F. Supp. 2d 1099 (D. Neb. 2007).  In *Hollins*, the court declined to compel arbitration pursuant to an arbitration clause in an agreement between a consumer and a "debt settlement" firm.  *Id.* at 1108.  The court, applying both Nebraska and Texas law, held that an arbitration clause specifying a Dallas, Texas, forum was substantively unconscionable because requiring "a . . . potentially bankrupt Nebraska resident to travel to Texas to arbitrate" was "arguably  a calculated decision by [the 'debt settlement' firm] to insulate itself from its malfeasance."  *Id.* at 1107-08.  The Court finds *Hollins* inapposite for two reasons.  First, *Hollins* is distinguishable because there had not been a subsequent agreement to arbitrate in the consumer's home state.  Second, the court in *Hollins* did cite *FirstMerit Bank* as setting forth the standard for substantive unconscionability under Texas law, however, the court in *Hollins* did not address the analysis in either *FirstMerit Bank* or *Randolph* as it relates to an arbitration clause imposing costs on a consumer.

*v. Slone*, 4 F.3d 176, 179 (2d Cir. 1993)) (omission in original).  Plaintiff offers two different bases for concluding that Defendant has waived its right to arbitrate this dispute.

Plaintiff contends that Defendant's statements about the unconstitutionality and the unfairness of arbitration constitute a waiver.  As the Court previously explained, Plaintiff has not explained how Defendant's statements about other arbitrations relate to the arbitration clause in the Agreement.  *See supra* III.A.  Even assuming *arguendo* that Defendant's other statements relate to the arbitration clause in the Agreement, Plaintiff has not articulated why these statements constitute a waiver.  The "Force Arbitration" document is not addressing the arbitration procedures that would govern the arbitration of this dispute -- the procedures of the AAA.  Thus, even if the "Forced Arbitration" document is construed as a repudiation of arbitration, it is repudiating a type of arbitration that is distinct from the arbitration that would take place in this case.  For the Court to infer a waiver based on Defendant's general statements, would be contrary to the admonition that "waiver of the right to arbitration is not to be lightly inferred.'"  *O.J. Distrib.*, 340 F.3d at 356 (quoting *Cotton*, 4 F.3d at 179).

Plaintiff also contends that Defendant's efforts to settle Plaintiff's claim in the course of the proceedings before the Dallas Better Business Bureau constitute a waiver.  "[A] party may waive the right by delaying its assertion to such an extent that the opposing party incurs actual prejudice."  *Gen. Star Nat'l Ins.*, 289 F.3d at 438 (citing *Doctor's Assocs., Inc. v. Distajo*, 107 F.3d 126, 131 (2d Cir. 1997)).  In *General Star* the party asserting the right to arbitrate under the contract had waited seventeen months between when the lawsuit had been

11

filed and when that party asserted its right to compel arbitration. *Gen. Star Nat'l Ins. Co.*, 289 F.3d at 438. The Sixth Circuit found that this delay had prejudiced the other party because that other party had incurred expenses in the course of those seventeen months. In consideration of this prejudice, the Sixth Circuit held that the party seeking to compel arbitration had waived its right to arbitrate because of the length of the delay. *Id.* In *O.J. Distributing*, the Sixth Circuit held that the party asserting the right to arbitrate under the contract had waived that right by negotiating for fifteen months before asserting the right to arbitrate and by denying the existence of the contract that contained the arbitration clause. *O.J. Distrib.*, 340 F.3d at 357. Defendant's actions are distinguishable from those in *General Star* and *O.J. Distributing* because Defendant asserted the right to compel arbitration just over a month after Plaintiff filed this lawsuit and Defendant has never denied the existence of the Agreement or the arbitration clause. Defendant's promptness in seeking to compel arbitration has avoided Plaintiff's needless incurrence of litigation expenses.

Plaintiff also contends that Defendant should have asserted its right to arbitration during the proceedings before the Dallas Better Business Bureau. Arbitration provides an alternative to the resolution of disputes through litigation. *E.g.*, *Eljer Mfg. v. Kowin Dev. Corp.*, 14 F.3d 1250, 1254 (7th Cir. 1994) ("[Arbitration] is a private system of justice offering benefits of reduced delay and expense.") Requiring parties to seek to submit a dispute to arbitration prior to the initiation of litigation would be inconsistent with the general purpose of arbitration - avoiding the expenses often associated with litigation. Before the

12

initiation of litigation there is no need to invoke arbitration because the event the parties agreed to avoid -- litigation -- has not yet been initiated.  The Court finds that Defendant has not waived its right to arbitrate.

There is a valid agreement to arbitrate and it is undisputed that this dispute is within the scope of the arbitration clause, so the Court must now consider whether Congress intended claims under the CROA to be nonarbitrable.

## IV.

Statutory claims are subject to arbitration "unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue." *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 26 (1991).  If there is such congressional intent, it "is typically evidenced in the statutory text, legislative history, or by an 'inherent conflict' between arbitration and the underlying purposes of the statute."  *Floss v. Ryan's Family Steak Houses, Inc.*, 211 F.3d 306, 313 (6th Cir. 2000) (citing *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 227 (1987)).  In assessing whether there is such a congressional command "it should be kept in mind that 'questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration.'"  *Gilmer*, 500 U.S. at 26 (quoting *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24).  The burden is on the party opposing arbitration to show that Congress intended the statutory rights at issue to be nonarbitrable.  *Gilmer*, 500 U.S. at 26;  *McMahon*, 482 U.S. at 227.

13

Plaintiff contends that even if there is an otherwise valid agreement to arbitrate, this dispute is nonarbitrable because Congress intended to exclude claims under the CROA from arbitration.[3]

Whether Congress intended claims under the CROA to be arbitrable is a question of first impression in the Sixth Circuit.  The only court to have addressed this question in a published or unpublished opinion is *Alexander v. U.S. Credit Management.*, 384 F. Supp. 2d 1003 (N.D. Tex. 2005).[4]

## A.    Text

Civil liability for violations of the CROA is provided by Section 1679g.  Section 1679g(a) provides in relevant part that:

> Any person who fails to comply with any provision of this subchapter with respect to any other person shall be liable to such person in an amount equal to the sum of the amounts determined under each of the following paragraphs
> . . . .

15 U.S.C.A. § 1679g(a) (West 2007).  Section 1679g(a) then sets forth provisions providing for the recovery of actual damages, punitive damages and attorney fees.  § 1679g(a)(1-3).

---

[3]Though Defendant's brief contends that Defendant is not a "credit repair organization" as defined by the CROA, at the hearing on this motion Defendant acknowledged that it was no longer pursuing that argument.  As Defendant has acknowledged that it is a "credit repair organization" for the purposes of this motion, the Court can proceed directly to the question of whether claims under the CROA are arbitrable.

[4]One other district court has enforced an arbitration clause in a dispute that included claims under the CROA; however, that court did not address the question of whether claims under the CROA are arbitrable.  *Vertucci v. Orvis*, No. 3:05-CV-1307, 2006 U.S. Dist. LEXIS 39320, at *2-4, *11-23, *37-38 (D. Conn. May 30, 2006) (unpublished).

14

There is no reference in Section 1679g to any particular forum in which claims for violations of the CROA must be pursued.

Plaintiff contends that the Court should follow *Alexander*, which held that the CROA prohibits arbitration, because Section 1679c(a) requires that consumers be advised that they have a "right to sue" and Section 1679f prohibits a consumer from waiving any protection or right provided by the CROA. *Alexander*, 384 F. Supp. 2d at 1011-16. Section 1679c(a) of the CROA sets forth a series of written disclosures that a credit repair organization must make to a consumer before the consumer enters into a contract with the credit repair organization. 15 U.S.C.A. § 1679c(a) (West 2007). One of the required disclosures is:

> You have a right to sue a credit repair organization that violates the Credit Repair Organization Act. This law prohibits deceptive practices by credit repair organizations.

*Id.* Section 1679f provides that a consumer may not waive any protection or right provided by the CROA. 15 U.S.C.A. § 1679f(a) (West 2007). The court in *Alexander* reasoned that the "right to sue" language in the mandatory disclosure prohibited arbitration. *Alexander*, 384 F. Supp. 2d at 1011. The court in *Alexander* then further reasoned that § 1679f(a) precluded consumers from waiving the prohibition of arbitration which the court had found based on the language in § 1679c. *Id.* at 1011-12. The court in *Alexander* premised its decision on the meaning of the phrase "right to sue." *Id.* The court in *Alexander* did not explain why the "right to sue" language in § 1679c(a) should take primacy over § 1679g(a), which provides consumers with the actual right to bring a claim against a credit repair

15

organization.  Besides entitling consumers to the actual disclosure statement, § 1679c does not afford consumers any rights or protections.  Instead, each of the rights of which consumers are advised of in § 1679c is separately set forth elsewhere in Chapter 41 of Title 15.[5]  The inclusion of separate sections actually providing the substantive rights indicates that the language in the disclosures in § 1679c does not create any rights.  Rather, the language in § 1679c only sets forth the phrasing that is to be used in advising consumers of their rights under other sections of Chapter 41 of Title 15.  As § 1679g(a) provides the actual right to bring a claim, the Court declines to follow *Alexander* in premising the arbitrability analysis on the language in § 1679c.

Section 1679g(a) does not contain any language indicating that claims under the CROA are nonarbitrable.  The language in § 1679g(a) is not materially distinguishable from the language in other federal statutes that the Supreme Court has held are arbitrable. *Randolph*, 531 U.S. at 88-92 (Truth in Lending Act);  *Gilmer*, 500 U.S. at 35 (Age

---

[5]15 U.S.C.A. 1681i(a) (West 2007) (providing a consumer with the right to dispute inaccurate information in her credit report, as described in § 1679c(a) ¶2);  15 U.S.C.A. § 1681j(b-f) (West 2007) (providing the conditions under which a consumer may obtain a free copy of her credit report, as described in § 1679c(a) ¶3);  15 U.S.C.A. 1679g(a) (providing that a consumer may bring a civil claim against a credit repair organization that violates the CROA, as described in § 1679c(a) ¶4);  15 U.S.C.A.  § 1679e(a) (West 2007) (providing that a consumer may cancel a contract with a credit repair organization within three business days of signing the contract, as described in § 1679c(a) ¶5);  15 U.S.C.A. § 1681i(a) (providing the procedures that apply when a consumer disputes information on her credit report, as described in § 1679c(a) ¶7);  15 U.S.C.A. § 1681i(b-c) (providing that in the event that a credit reporting agency does not resolve a dispute to a consumer's satisfaction, the consumer may file a brief statement to be included in her credit report, as described in § 1679c(a) ¶8).

Discrimination in Employment Act);  *Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 479-86 (1989) (Securities Act of 1933);  *McMahon*, 482 U.S. at 227-40 (Securities Exchange Act of 1934, Racketeer Influenced and Corrupt Organization Act); *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 628-40 (1985) (Sherman Act).  The Supreme Court's decision in *Mitsubishi Motors* is of particular relevance to the language in the CROA.  In *Mitsubishi Motors* the Supreme Court held that the language in 15 U.S.C. § 15(a) was insufficient to render antitrust claims nonarbitrable.  473 U.S. at 635-37.  In relevant part, 15 U.S.C. § 15(a) provides that "any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws *may sue therefor in any district court of the United States . . . .*"  15 U.S.C. §15(a) (1982 & Supp. IV) (emphasis added).  The Supreme Court did not find 15 U.S.C. § 15 to evidence a congressional intent to preclude Sherman Act claims from being arbitrable. *Mitsubishi Motors*, 473 U.S. at 635-37;  *see also Rodriguez de Quijas*, 490 U.S. at 482 (describing *Mitsubishi Motors* as having held that 15 U.S.C. § 15 does not preclude the arbitration of claims under the Sherman Act).  The language in the CROA evidences no greater congressional intent to preclude arbitration than the word "sue" and the reference to district courts present in 15 U.S.C. § 15.  In consideration of these Supreme Court cases, this Court cannot conclude that Congress intended claims under the CROA to be nonarbitrable.

The text of the CROA does not evidence a congressional intent for claims under the CROA to be nonarbitrable.

## B.      Legislative History

Neither party has identified any part of the CROA's legislative history that specifically addresses arbitration.  The Court also has not found any part of the CROA's legislative history that addresses arbitration.  In *Alexander* the court did refer to legislative history, but none of the referenced legislative history was specific to arbitration.  384 F. Supp. 2d at 1014-15.  In the absence of any discussion of arbitration in the legislative history, the legislative history cannot provide a basis for the Court to conclude that Congress intended claims under the CROA to be nonarbitrable.

## C.      Inherent Conflict Between Arbitration and the CROA

Section 1679 provides that the purposes of the CROA are:

> (1) to ensure that prospective buyers of the services of credit repair organizations are provided with the information necessary to make an informed decision regarding the purchase of such services; and
> (2) to protect the public from unfair or deceptive advertising and business practices by credit repair organizations.

15 U.S.C. § 1679 (West 2007).  "[T]he Supreme Court has repeatedly enforced arbitration of statutory claims where the underlying purpose of the statutes are to protect and inform consumers." *Davis v. Southern Energy Homes, Inc.*, 305 F.3d 1268, 1276 (11th Cir. 2002) (citing *Basic, Inc. v. Levinson*, 485 U.S. 224, 234 (1988); *Rodriguez de Quijas*, 490 U.S. at 485-86; *McMahon*, 482 U.S. at 242); *accord Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 280-81 (1995) (noting the extent to which arbitration can be preferable to litigation for consumers); *Walton v. Rose Mobile Homes, LLC*, 298 F.3d 470, 477-78 (5th

18

Cir. 2002) (finding that consumers' rights to information and protection from deceptive practices can be protected through arbitration). The CROA is not distinguishable from the other statutes that the Supreme Court has held to be arbitrable despite having been intended to protect and inform consumers. Thus, the Court holds that there is no inherent conflict between arbitration and the CROA.

In consideration of the text, legislative history and the purpose of the CROA, the Court holds that Congress did not intend claims under the CROA to be nonarbitrable.

## V.

For the foregoing reasons, the Court grants Defendant's motion to compel arbitration. As all of the claims raised before this Court must be referred to arbitration, this Court further orders that Plaintiff's complaint is dismissed without prejudice.[6] A judgment will be entered consistent with this opinion.

---

[6]The Sixth Circuit has not resolved in a published opinion what the appropriate course of action is when all claims are referred to arbitration. There is, however, substantial authority that indicates that the best procedure for enforcing arbitration agreements when all issues are referred to arbitration is to dismiss the court action without prejudice. *See Stout*, 228 F.3d at 714, 716 (affirming a district court's dismissal of a complaint "without prejudice to reinstatement should further proceedings be needed after arbitration."); *Hensel v. Cargill, Inc.*, No. 99-3199, 1999 U.S. App. LEXIS 26600 (6th Cir. Oct. 19, 1999) (unpublished) ("[L]itigation in which all claims are referred to arbitration may be dismissed." (citing *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992); *Sparling v. Hoffman Const. Co., Inc.*, 864 F.2d 635, 638 (9th Cir. 1988))); *Alford*, 975 F.2d at 1164 ("The weight of authority clearly supports dismissal of the case when all of the issues raised in the district court must be submitted to arbitration." (citing *Sea-Land Service, Inc. v. Sea-Land of P.R., Inc.*, 636 F. Supp. 750, 757 (D.P.R. 1986); *Sparling*, 864 F.2d at 638; *Hoffman v. Fidelity and Deposit Co. of Md.*, 734 F. Supp. 192, 195 (D.N.J. 1990); *Dancu v. Coopers & Lybrand*, 778 F. Supp. 832, 835 (E.D. Pa.1991))); *Saneii v. Robards*, 187 F. Supp. 2d 710, 714 (W.D. Ky. 2001) (dismissing complaint without prejudice in light of binding arbitration agreement). This Court agrees with this procedure.

Date: ____June 27, 2007____          /s/ Robert Holmes Bell_____
                                      ROBERT HOLMES BELL
                                      CHIEF UNITED STATES DISTRICT JUDGE